We'll turn to our next case. It's two cases consolidated 24-3064 and 24-3065. Wilson v. Curtis and Dillon v. Curtis. Wait, wait until he gets in. Wait, wait until the door is closed. So I make sure the door is closed. Well. There we go. Thank you. Now you can start. Thank you, Your Honor. Good morning. May it please the court, Stephen Vladek for the appellants. I'd like to focus on three points this morning. First, the Supreme Court has settled that the Constitution has nothing to say about which criminal offenses the military may try by court-martial. And only a little to say about the procedures by which those offenses can be tried. Instead, the principal constitutional limit the court has recognized has involved who can be tried by the military by requiring the defendants actually be in the military at the time of both their offense and their prosecution. Second, appellants were not in the military at the time of their court-martial. Not only were both retired from active duty, but they had been involuntarily retired due to their government-identified medical disabilities. That status reflects the military's own determination that appellants no longer were and never again will be fit for active service. A fact that distinguishes appellants' cases from both Beghani and Larabee. Third, and unlike what was true in Toth and Covert and the three June 1960 cases, here the question is not whether appellants can be tried at all. Rather, it's merely in which court. Both appellants could have been prosecuted in civilian U.S. courts. Thus, even if the unavailability of a civilian criminal forum could bear on whether a permanently disabled retiree remains in the land and naval forces, that's just not at issue in these cases. For all those reasons, the court-martial in appellants' cases lacked jurisdiction to try them, and the district court's denials of their habeas petitions should be reversed. Let me ask you two questions that were raised by your summary. First, I thought each was accused of offenses in Korea, is that right? One, Appellant Wilson, Judge Hart, was accused of offenses in Korea. Appellant Dillon was accused of offenses in Oklahoma. And so, Appellant Dillon would have been subject to civilian criminal jurisdiction. Either in Oklahoma state or federal court. As for Appellant Wilson, the offenses were in Korea. This is exactly what Congress meant to cover when it enacted the Military Extraterritorial Jurisdiction Act of 2000, or MEJA. The government has not suggested at any point that if Appellant Wilson could not be tried by court-martial, our submission here, he would not have been triable under MEJA. Judge Hart's MEJA is exactly for this kind of case. And so, both appellants could have been tried in civilian courts. And for the offenses in Oklahoma, I assume the offense occurred in military base? So, I must confess, Judge Hart, the record is not clear on this point. You're saying either civilian state court or civilian federal court. Correct. So, either state authorities in Oklahoma or federal authorities under the Assimilative Crimes Act, if the crimes were committed on federal property. I just don't believe the record speaks to that question. The other question is, if he could be called back into service, if Mr. Wilson could be called back into service, do you think that would change this case? I don't, Your Honor. And I think that's true for two reasons. The first is that it has not been the rule for anyone other than a retired service member that the specter of future active service justifies being subject to the UCMJ while you are inactive. So, for example, with regard to reservists, who are much more likely, Judge Hart, to be called to active duty during ordinary times or during an emergency, the rule since the beginning and the rule currently codified in the UCMJ is that reservists are not subject to the UCMJ while they are inactive. So, I don't think that even if the specter of recall were meaningful, that would change our position. But, second, Judge Hart, But you're relying on what's constitutional. You're not relying on any statute. That's true. But I will just say, so it is true that Congress has carved reservists out. But the Court of Military Appeals, the predecessor to the Court of Appeals for the Armed Forces, has suggested that there would be grave constitutional questions. Should the military ever have the power to and ever try to court-martial an inactive reservist for the same reason why there are grave questions here. As the Federal Circuit recently concluded in the Nicely case, these are civilians. They have no ongoing military duties. They don't have to go through drug tests. They don't have to be vaccinated against COVID as all other military personnel were. And so, yes, if there were a recall order, we don't dispute that at that point they would be back in the land and naval forces. We just think Judge Tatel had it right in the DC Circuit that the recall order is a gateway to military status, not proof that there's military status all the way through while these folks are living what are for all intents and purposes, civilian lives. What's the difference between the retired personnel and discharged personnel? So there's an advantage, I presume. There is an advantage. Judge Tinkovich is exactly right. So the advantage that you have by retiring instead of separating is that you get to keep your pension. So retirement is something that was meant as an incentive for folks to stay in the military, for non-disability retirees for 20 years or more. Disability retirees, obviously the clock is different. But the idea was instead of separating and just walking away from the military, you stay in in exchange for a pension. You stay in in exchange for access to better health insurance. You stay in in exchange for access to what are technical but preferential veterans benefits. And so the idea was that the reason to stay in was because your career of distinguished service had entitled you to additional benefits that those who separated were not entitled to. Now the problem, Judge Tinkovich, is that disability retirees are really in a different category. The time limits are different. The pay is different. My clients as disabled retirees are receiving disability benefits, not retired pay. And that reflects the very different reality that if the government is permanently retiring you due to disability, the government is not trying to keep you around as a reserve source of manpower. Is that disability determination irrevocable? In other words, I don't know exactly how the disability is here, but one is a PSTD and maybe it would be resolved, cured. I mean, does that matter? Is the determination of a permanent disability permanent? I believe it is. But I think it's also important, Judge Tinkovich, in context, the permanent disability determination comes only after a period where there's a temporary, sorry, wrong emphasis, a temporary disability determination. And so the government retains the authority while a retiree is on the TDRL, the temporary disability retired list, with the retiree's consent to recall them to active duty if the disability resolves itself. But what Congress provided in what's called Chapter 61, since Chapter 61 of Title 10, Congress provided that once you are diagnosed by the government's own experts with a permanent disability, your two choices at that point are separation or permanent retired status. A permanent status in which you would remain on the government's position, Judge Tinkovich, permanently subject to the UCMJ for a disability the government itself has determined renders you unfit for active service. And even if these individuals were capable of some type of desk job, you know, something out there, that doesn't matter? In other words, there's a conflict, we need military personnel, can these be recalled to do whatever job they might be capable of? So on paper, Judge Tinkovich, the government's mobilization criteria, and this is DOD Instruction 1352.01, paragraph 3.2, subparagraph G2. On paper, it provides for the recall of disability retirees, quote, but they should be deployed to civilian defense jobs, unquote. And the Supreme Court in the Guadalajara case in 1960 held that it would be unconstitutional to subject those in civilian defense jobs to military jurisdiction. I think Judge Tinkovich, it's also worth pointing out, the government has not cited to a single example since the UCMJ was enacted in 1950 of a permanently disabled retiree ever being recalled. And so even though my answer to Judge Hartz is that that's not conclusive, we think it is strongly probative of what the law already reflects. These are not folks who are going to be rendering military service in the future. See, maybe there's a distinction here that I'm missing, but I thought the government's brief did say that retired and disabled people had been recalled on several occasions. So if I may, Judge Hartz, it's a distinction that's quite elusive in the government's brief, but it is a distinction between voluntary recalls, where the individuals are asked to return to active duty and they volunteer to do so, and involuntary recall. And the reason why we believe that's relevant, Your Honors, is because anyone can volunteer if they meet the relevant criteria. But the question is whether you can be forced back into active duty. The government's brief cites to zero examples of that since the UCMJ was enacted. Of an involuntary recall. Of an involuntary recall of a permanently disabled retiree. And if I may... But retirees have been recalled. You're just saying permanently disabled can't be. And indeed, I'm not aware, Your Honor, of that many examples of even temporarily disabled retirees being recalled. The examples the government cites in its briefs are all examples of what we might refer to as non-disability retirees. The types of retirees who are at issue in the Beghani and Larrabee cases. And, you know, we've argued in our briefs that we think those decisions are both wrong. I think the critical point for this court is it doesn't matter if they're right or wrong, because these cases are materially different. Does it matter whether it's 100% disability or 30% disability? So, legally, no. The government's authorities are... The requirement in the statute is that you can be placed on the permanent disability retire list if your rating is 30% or higher. And that if it's between 30% and 100%, that's a distinction without a legal difference. It might bear upon the calculation of particular benefits, Your Honor, but it doesn't have jurisdictional significance. And so, part of why we think this is such an important point, Your Honor, is because the Supreme Court really has sort of split the difference the way that I alluded to at the outset. That the way the court polices military jurisdiction is not by looking at the offenses that can be tried. Any offense can be tried. All of the offenses in both of these cases were civilian crimes that can be prosecuted in civilian courts. It's not by worrying too much about the procedures. Courts, Marshall, can have non-unanimous convictions. They don't have what we would call juries. They don't have the full canopy of Sixth Amendment rights. The trade-off has always been that the Supreme Court has zealously policed the line between who can be fairly regarded as being in the land and naval forces and who cannot. I think it was the majority in Larrabee. You know, really tried to dig back and see from an originalist perspective what the Constitution meant on this subject. And they marshaled some, you know, cases, you know, from Britain. And I thought Judge Tatel's argument was more of a policy argument. Help me out on that. Why shouldn't we look more closely at what the majority did there? Whether we had time to do a full discourse on the history, Your Honor, but I will just say I believe the history does not remotely support the Larrabee majority. And briefly for two reasons, and I'd like to further explore this in rebuttal if I may. But very briefly, with regard to the English history, the only real example that the Larrabee majority had was Parliament's subjecting of so-called half-pay officers to court-martial for a very brief period from 1748 to 1751. Judge Timothy's Parliament repudiated that practice because it was controversial, because those were civilians. And the amendment the government points to in its brief in 1786 that subjected certain half-pay officers, it was only when they were, quote, holding brevet rank, unquote, which meant they had been activated. So the British history actually is completely in line with our view, not with the government's. As for the American history, the Larrabee panel pointed to the so-called Pennsylvania mutiny. In which you had a group of Continental Army soldiers who, instead of being furloughed, mutinied. Your Honor, the critical point is those soldiers mutinied instead of taking the furlough. They were still in their barracks on active duty at the time that they acted unlawfully. And indeed, I think it's telling that the government does not even cite the Pennsylvania mutiny in either of its briefs. If I may, I'd like to reserve the balance of my time. Thank you. Thank you very much. Thank you, Your Honor, and may it please the Court. Graham White for the United States. The petitioners in these cases were convicted at court-martial for sexually assaulting children prior to their retirement for the Army. They now ask this Court to vacate their convictions as unconstitutional on the ground that the court-martial proceedings did not commence until after their retirement. But this argument is meritless. Congress has plenary authority under the Make Rules Clause to extend court-martial proceedings until after their retirement. And it is settled law that those who choose to have retirement status, as opposed to those who voluntarily separate from the military at the completion of their active duty, are in the armed forces. That is why this Court's sister circuits and the military courts have unanimously rejected the arguments that— When you say settled, you're talking about by lower courts, not by the Supreme Court. No, Your Honor. So with respect to the question of whether retirees are in the military, that question—the Supreme Court has spoken to that question in a number of different cases. If I may, Convey-Anderson, one of the holdings in that case was whether retired officers could serve on court-martial panels. And the Supreme Court said that they could because they were still in the military. Since Convey-Anderson, the Supreme Court has said in United States v. Tyler, in McCarty, and in Barker, that retired military officials are unquestionably in the armed forces. And that is the only question that is relevant to this Court's determination of whether the court-martial proceedings here were constitutional. Well, the language in the armed forces is—that's the terminology in the Constitution with respect to court-martial jurisdiction, right? Was that the language that was being interpreted in these other cases, or were they looking at statutory provisions that related to whether someone is in the armed forces or not? So, let me just say it more broadly in the Supreme Court's court-martial jurisdiction cases. Yes, the Supreme Court in a number of cases has recognized that the Constitution, in particular the Make Rules Clause, authorizes court-martial jurisdiction over those who are not on active duty or performing military functions. In three specific cases, and where the Supreme Court was directly addressing the constitutional text. Okay, that was in Ex Parte Read, where the Supreme Court recognized the propriety of court-martial jurisdiction over the Navy paymaster's clerk, a civilian employee who had been bound to the Navy through various procedures. In Convey-Anderson, with respect to the military prisoners who had already been separated from the military, had no military function, but were still in military custody. And in Billings, where the Supreme Court said that there was no question that Congress had the power to subject those who disobey lawful draft orders to court-martial jurisdiction. Okay, and so the test that petitioners are advancing here, which is that the court-martial jurisdiction is only proper where the accused has a military role at the time the court-martials were convened, is simply inconsistent with those precedents. And in those cases, what's one of the distinctions that plaintiffs are relying on is that there's no way they can be ordered to perform any military service. Do you agree with that factually? And if you don't dispute it factually, why isn't that a significant distinction from any of the cases that you've recited? Well, let me make sure I'm understanding your question. The petitioners in these cases are subjects who are ordered to be recalled to active duty. So there is an order that continues to bind them to the military. And so that is why this case is consistent with the D.C. Circuit's ruling in Larrabee, which is that there is a form of— So they can be, but no one ever has been. Disabled retirees? Yes. So let me speak to that specifically. So, yes, permanently disabled retirees were actually recalled involuntarily during World War II. Now, yes, it's true that there have not been involuntary recalls of disabled retirees since the UCMJ was passed— Recalled to military duty or to perform civilian services. Sorry. There have not been examples of involuntary recalls of disabled retirees since the UCMJ was passed in 1950. But that is because the military's authority to do an involuntary recall under 10 U.S.C. Section 688 is limited where there is no formal declaration of war in place. And there has not been a declaration of war since World War II. I think we're fortunate for that. But let me also just say that Congress's authority under the Make Rules Clause is to prepare the nation for future conflict. And so its authority necessarily cannot be limited by how frequently or infrequently disability retirees have been recalled. In the past. Now, if I could, I'd also like to respond to a question that Judge Tukovich had asked about the difference between retirees and discharged servicemembers. And sort of the corollary to that, why it's important to extend court martial jurisdiction over retirees specifically. Okay, so military retirees have an ongoing connection to the military. As we've discussed, they have the potential to be recalled to active duty. But in addition to that, retired officers can wear the uniform. They can use their official military titles. They can access military bases and other facilities, including commissaries, recreational centers, libraries. They can patronize officers' clubs. And many retirees can and do have mentor-mentee relationships with those on active duty service members. And so, yes, as a general matter, there is a need to hold accountable this segment of the military community for post-retirement conduct that undermines the chain of command, that potentially influences active duty service members in dangerous ways, and otherwise brings discredit to the armed forces. You know, I think it was in the appellant's brief. I mean, that certainly raises this factor of these retirees being tried for all sorts of tradition, you know, civilian crimes. You know, basic felonies or, you know, failure to appear. You know, getting court-martialed for crimes that most people would say that has nothing to do with military discipline. So let me have a couple of responses to that, Judge Tinkovich. First, under Army regulations, they expressly state that retired officers should not be court-martialed except under extraordinary circumstances. And while court-martialed retired officers has been consistent over the past 200 years, it has been rare. I think in the past 20—since the year 2000, there have been fewer than two dozen reported legal decisions involving retired officers. So there—this is not— Two thousand? Sorry, since the year—since the year 2000, yes. Okay. How many? Less than two dozen. And so there have not—there has not been sort of the widespread encroachment on the authority of civilian courts that my friend on the other side here is suggesting. Well, here the offenses were committed while they were in service, right? That's correct. So of those two dozen, do you know how many were— I can't speak to that. But I would just note that the potential for a loophole that is being created by the rule that my friend on the other side is advocating for here, he mentioned during his opening that these offenders could potentially be tried in civilian courts. That is not—it is not clear that that is correct. And I think there are thorny and difficult jurisdictional questions about the Military Extraterritorial Jurisdiction Act that we didn't brief in this case. But I would just point to the Court of Appeals for the Armed Forces decision in Beghani, which touched upon this issue a little bit as to whether retired officers could have been actually prosecuted in civilian courts. And the concern there was that they could not be because MIJA, that statute, was addressed to cover a jurisdictional gap from the Supreme Court's decision in Tov, where those who are completely separate from the military could potentially escape justice for crimes committed on active duty. MIJA contains an exception for those. In other words, it does not give civilian courts jurisdiction if the service member is covered by the UCMJ. And retired officers are covered by the UCMJ. So it's a very difficult, unclear question as to whether they could be prosecuted in civilian courts. But even if they could, let me just make an— Does that even apply to crimes committed by them once they start their retirement? Does it bar civilian courts from prosecuting retired members of the service who commit the crimes after they take retirement? So, let me just make sure I'm understanding your question. As a general matter— It's probably a dumb question, but I got confused. Go ahead. So, the UCMJ would—let me just say as a general matter, as a preparatory point here— The UCMJ would criminalize certain military-specific post-retirement conduct. MIJA, the statute that I referenced, again, would only apply to those who are discharged from the military, who aren't in a retirement status under the statute's plain terms. But if I could just return briefly to a point that I was addressing previously, which is that even if these offenders here could be charged in civilian courts, both petitioners were charged with military-specific crimes under Article 134 for bringing discredit to the Armed Forces and there is no counterpart in state or federal criminal law for that. They were charged with sexual offenses as well under Articles 120 and 125, but in addition, they were also facing military-specific crimes that have no civilian counterparts. To answer Judge Hartz's question, post-retirement, there's still fair game for a court-martial. So, any crimes committed post-retirement. So, again, the circumstances under which retired officers could face court-martial jurisdiction are exceedingly rare. And so, for example, there is a need to address circumstances where, for example, retired officers might encourage those who are on active duty to disobey lawful orders or they could encourage their other retired officers to disobey a valid recall order. Under those circumstances, Congress determined that there is a need for military jurisdiction to ensure—to defend military readiness. And unfortunately, the rule adopted by my friend on the other side here would categorically prohibit Congress from ensuring military readiness in that way by preventing court-martials for that type of conduct. If Mr. Wilson had committed a child sex offense after retirement, while he's on his permanent retirement, could that be tried? It could be tried. Could that be a court-martial? It could be tried under the UCMJ, yes. But I think as the facts in these cases demonstrate— That's disturbing. Doesn't that disturb you? I'm sorry? Doesn't that disturb you, that that could happen? So let me just say, as the facts of these cases sort of—and Begani underscored the circumstances under which the military is convening court-martials for sexual offenses, where those offenses are occurring generally while the offenders are on active duty but aren't discovered until after their retirement. That's often the case with sexual assault cases specifically, that the conduct is not uncovered until years later. And again, as I mentioned earlier, Army regulations expressly state that retired officers should not be prosecuted unless there are extraordinary circumstances present. So look, nobody is trying to court-martial retired service members from any sort of civilian offense here, but the extraordinary circumstances under which they are subject to jurisdiction are generally where these offenses occur during their service of active duty or for post-retirement conduct that potentially discredits the Armed Forces or undermines military readiness. Although I guess the military could deem child sex offenses committed by permanent retirees to be a grave offense against—that would tarnish the image of the military and court-martial for those types of crimes, right? I mean, I think you're right. You know, why would they bother unless it's an extraordinary circumstance? But I can see a commanding officer deeming, you know, a predator in the community is reflecting poorly on the military and going after them for a court-martial. So with the usual caveat that those facts are not what this case is presenting, yes, the Constitution would allow that because Congress made a determination that it was necessary to hold retired officers to a higher standard. But look, as a practical matter, the number of court-martial proceedings over retired officers for post-retirement conduct is extremely rare. There is not some sort of widespread encroachment on civilian courts going on here. Let me get back to a question that maybe I can do better at asking this time. You said there's some question whether civilian courts, federal or state, could have—whether those courts could prosecute the defendants here—the plaintiffs here, actually. And that's because they could be court-martialed. But then why do federal and state courts have jurisdiction to prosecute, say, child sexual abuse by a retired officer, which could be court-martialed? What is it that keeps the civilian courts from proceeding in these cases? And why doesn't that also apply when a retired officer commits an offense? So there are more difficult jurisdictional questions when the offenses happen on military bases, especially overseas. And so, for the example of Petitioner of Sergeant Wilson, those offenses occurred on a military base in Korea. There are obviously questions about the status of forces agreement with South Korea and rules about who can exercise concurrent jurisdiction there. And so, yes, when the offenses happen on a military base, there are rules about concurrent jurisdiction with states, and it will probably vary on a state-by-state basis. We didn't brief those questions here, so I don't want to get out in front of my students. Okay, so it's because it was on the base, not because they could be court-martialed. That complicates civilian jurisdiction. Is that right? The complications arise, yes, when the offenses occur on a military base. Okay, okay. That's strange enough. Sorry. Yes. So, with my last minute, I'll just respond quickly to this point. Yeah, before you—and I am interested in what the Continental Congress thought they were doing. That's where I was just going to go. Okay, thank you. So, if you have a specific question, or can I— Please. So, let me just make a prefatory point here that the D.C. Circuit explained in its analysis in Larrabee, which is that the plain text of the Make Rules Clause gives Congress plenary authority to make rules for those who are in the armed service. So, the relevant question for the purposes of this historical original meaning analysis is whether inactive duty officers or retired officers were in the armed forces at the time of ratification. Whether they were also subject to court-martial jurisdiction is helpful to establishing military status, but it's not necessary, right? And so, what the D.C. Circuit did in Larrabee is explain that from the passing of the Mutiny Act in 1689, there was a long-standing practice of subjecting half-pay officers to court-martial jurisdiction. Now, it's true that—and this was before the amendments to the Mutiny Act in 1748, for the preceding half-century in practice, yes, half-pay officers were court-martialed. In the three-year period from 1748 to 1751, they were also court-martialed under more clear legal authority. But even apart from that—and I see I'm over time, can I wrap this, or do you want me to— Yeah, go ahead, if you could. In addition to the court-martial example, there are a number of examples that the D.C. Circuit discusses in Larrabee of Acts of Parliament referencing half-pay officers as being in Her Majesty's land and naval forces, which is the relevant consideration here for original meaning. Unless the Court has any questions, I would—we would ask to affirm. Thank you. Thank you. And how much time did he have left? Make it two minutes since he went over, so you've got two minutes. Thank you, Your Honor, I appreciate that. Very briefly, just a couple of clarifications might assist the Court. First, government counsel invoked 10 U.S.C. Section 688 as the recall authority, and it says it only applies during the time of declared war. It's just not true. The statute says retired members can be recalled, quote, at any time. And indeed, the very authorities the government points to in its brief for voluntary recalls were based on that statute. With regard to MEJA, I think it's actually very important to quote the specific language of the statute, which says offenses may be tried when committed outside the United States unless, quote— oh, sorry, when, quote, such member—a reference to a former service member— ceases to be subject to such chapter. That's a reference to the UCMJ. This is 10 U.S.C.—sorry, 18 U.S.C. 3261 D.1. Our position is that the appellants ceased to be subject to the jurisdiction of the UCMJ when they retired. Therefore, we do not dispute that MEJA applies, and there are multiple cases where other circuits have applied MEJA in those circumstances. Really briefly, to the concern about accountability, I'll just note the government did not explain why Appellant Dillon's offenses could not be tried in state or federal civilian court in Oklahoma. It has never explained why. We don't dispute that there are any number of ways to hold retired service members accountable. The Hiss Act allows for the deprivation of their benefits. They can be tried in a civilian criminal court. They can be administratively separated, a position the government took in the D.C. Circuit in Larrabee. And so this is not about accountability. This is about— What if they encourage people on base to disobey orders? Then they can be prosecuted because then they are soliciting criminal activity. And so the general federal criminal solicitation statutes, I think, would be quite applicable in those contexts. We also, I think— Criminal activity includes disobedience of military orders? So I think, Your Honor, there would be a very strong case. And insofar as that's a problem, I think Congress would have the constitutional authority to clarify that. If I might briefly just make one last point. With regard to the Supreme Court precedents that the government refers to, I think it's worth pointing out that the Supreme Court has said over and over again that when it comes to the limits of the jurisdiction of civilian courts, we worry about the marginal cases because that's the slippery slope. The government says this hasn't happened very often. With respect, this is now the ninth case that's reported in the last seven years where the government has done this. There's been no suggestion, there's been no public explanation for what the extraordinary circumstances were in any of those nine cases. Do you know how many of those were offenses that occurred while they were in the military, on the military base? So I believe that these two are the first. The others, Larabee, Boghani, et cetera, I believe were all post-retirement offenses. But, Your Honor, the government was right about one thing. The law draws no distinction. The statute draws no distinction. The Supreme Court has drawn no distinction. The crime in Toth, the capital murder committed in Korea during the Korean War, was committed by an active duty service member while in active combat operations. And the Supreme Court still said the military can no longer exercise jurisdiction. In Toth, that allowed the service member to walk free for a capital crime. No one is suggesting that that's what should happen here. The question is just whether this court is going to take seriously the founders' deep distrust of military jurisdiction in a context in which the government is trying to apply it to two million civilians. Thank you very much, Your Honor. Can I ask you a question? Before you sit down, just a variation of Judge Hartz's question. I'm just imagining a scenario where, you know, your clients put on their military, their uniforms, and stand outside the entry of the base and, you know, basically advocate that the active duty service members disobey unconstitutional orders by the Joint Chiefs of Staff. Or a variation on that, they commit a series of crimes where they don their uniforms and that's the way they like to commit crimes, whether it's shoplifting, assault, etc. Wouldn't there be some military interest in preventing them from wearing their uniforms while committing crimes? Yes, and if I may, Your Honor, the relevant regulations, which we did not cite in our briefs, limit the circumstances in which retired service members like my clients are allowed to wear their uniforms and would not actually lawfully allow them to wear their uniforms in any of those circumstances. How do they enforce that?  But this has always been the point, Your Honor, which is that the government's approach to dealing with administrative infractions and other matters that retirees engage in that bring disrepute upon the military has been to go through civil or at least civilian administrative and, if necessary, criminal. Within the U.S. military or in an Oklahoma state court? It can be both because, of course, once you are out as a civilian, as my clients were, the question of your benefits and your other entitlements becomes often a mixed question of state and federal law. Do they get a court order saying don't wear your uniform? I think it should tell us something, Judge Tinkovich, that this is a hypothetical that has never arisen. But if I may, just very briefly, I do think that if the question is a concern about future cases, we don't dispute Congress's power to address those. And just really quickly, we don't dispute that Congress could, if this really were a problem, invest retired service members with enough of a continuing relationship with the military to justify the assertion of court martial jurisdiction. The relevant point here is that there isn't one today. Thank you very much. Thank you, counsel. Case is submitted. Counsel are excused.